Robertson, Ch. J.
The only question before us seems to be whether the certified copy of the pleadings, proceedings and enrolled decree in the former suit in equity in the circuit court of the "United States, between the present plaintiff as complainant, and the present defendant and a Mr. "Wheatley as defendants, was admissible in evidence on the trial of the issues in this action. Such certified copy was twice offered ; first generally, and a second time to prove that the matters in issue in this action were adjudicated in such former suit by said court, and prevent any contest of the same matter in this action. The only ground of objection to them stated was, generally, that they were “ not properly certified,” without pointing out any defect in the certificate; and an exception was duly taken to their exclusion.
The counsel for the plaintiff now desires us in disposing of the appeal to abstain from expressing any opinion upon the question of the relevancy of such proceedings in the suit in the "United States court to any matter in this action. The counsel for the defendants is only willing that we should do so if the court is of the opinion that such document was not properly authenticated, and will therefore refuse a new trial. One of the printed points made by him is, that the decree in such suit was not an estoppel or an adjudication of the same matter, for which several reasons are assigned and authorities cited. The question before us, and no other, is, whether a new trial should be granted for the exclusion of legal evidence. If we refuse a new trial there is nothing to prevent the defendant from taking the ground in an appellate court, that even if the certificate was proper the evidence was not admissible. If the defendant had stipulated that if the certificate were correct he would waive all *343 objections to the admissibility of the evidence, it would have taken away from the objection to the certificate the character of a mere mooted question, whose decision would have no practical result in this action, unless adverse to the plaintiff, which it must bear if the proceedings themselves, if duly certified, were inadmissible, and an objection could be taken on that ground on a new trial. The case being before us without such a stipulation, the question may as well now be disposed of, if necessary to dispose of the question of a new trial, as upon such trial, whether the proceedings in question do not create an estoppel or furnish evidence will be material to the issues. As to the exclusion of the document in question, upon the objection of a defective certificate,—even conceding what may not be well founded, that the certificate of the clerk as an authentication derives all its force from a statute of this State which requires a clerk of a United States circuit or district court to certify that he has compared the copy of the record or proceedings certified, with the original, and that the same was a correct transcript of the whole, in order to'make such copy evidence (N. Y. Sess. L., 1845, p. 326, ch. 303, 4th ed., stat. ch. 303, p. 641),—I do not think the objection was taken in such a form as to justify the exclusion upon the ground now suggested, to wit: That the clerk did not state that he had made the comparison required by the statute. It was held, nearly thirty years ago, in the case of Norman v. Wells (17 Wand., 136), that a general objection to the sufficiency of proof of a deed was not available. The particular objection must be pointed out. An objection that a certificate was not duly authenticated, does not present the question whether it contained the necessary facts (Waterville Manufacturing Company v. Brown, 9 How., 27). A general objection to receiving an instrument in evidence will not render an objection to the form of a certificate authenticating it available on appeal (Mabbett v. White, 12 N. Y. [2 Kern.], 442). By omitting to state why a note could not be read in evidence under a declaration, in an objection in that general form, the latter becomes unavailing (Cayuga County Bank v. Warden, 6 JY. Y. [2 Seld.\ 19, 30). The objection taken in the • present case was' of the most general kind, that the document was not properly certified. This, of course, gave the plaintiff no information how he could repair the defect aimed at. That *344 now suggested is of a very technical kind. The clerk by certifying under his oath of office, that the paper produced was a copy, is to be presumed to have taken the proper mode of ascertaining that it was so, and although such defect may be fatal if pointed out on the trial, the plaintiff was entitled to repair the defect on the spot by calling witnesses to prove the paper to be a copy. I think the papers offered were therefore improperly excluded under such an objection.
The more difficult question remains as to whether such documents were admissible as evidence of a prior adjudication,.upon any of the matters involved in this action. This can only be determined by investigating the issues raised by the pleading's, the object of the action, the nature of the former, .and the express adjudication made in the suit in equity in question. The complainant in that suit, in her bill of complaint, claimed, as she does in this, that she was the owner or literary proprietor of the drama in question, by purchase from the original author (Taylor) the manuscript of which, partly in the handwriting of such author, has been delivered to her, which drama never was printed, published or copyrighted by any one for the benefit of the author; that she had deposited in due form of law to obtain a copyright therefor the title of such drama in the office of the clerk of the district court of the United States for the southern district of Hew York, and that she had caused such drama to be publicly represented in the city of Hew York, deriving much profit therefrom; that one of the defendants (Clark) has obtained from another, who had performed one of the characters in such drama, under her employment, the principal parts thereof'and their language; and both were then engaged in representing such drama for their own benefit in a theatre in Philadelphia. The defendants, in their answer, set up as a defense a license from a Mrs. Chapman, the widow and residuary legatee of an alleged author of such drama (Silsbee) jointly with the person named in the bill as such author (Taylor) who (it was alleged therein) derived the entire title to such drama, by an assignment from Taylor of his interest therein to a Mr. Webster, and the subsequent release by the latter of his interest therein to such joint author, who bequeathed all his personal, property to his widow. They also set up the alienage, of the original alleged author (Taylor), and of the complainant; took *345 issue on the facts alleged in her bill of complaint; and averred that the drama performed by them, instead of being identical with that performed at her theatre in New York, had been altered and improved by them therefrom, and only as so altered and improved was performed at their theatre. Proofs appear by the proceedings to have been taken in £he suit, although they form no part of the record presented.
The conclusions to which the court in question came, and which may be considered as its adjudication of the rights of the parties, and of the points in issue in the suit, are to be found in the decretal order of November, 1860, directing a reference to a master to compute the value of a license from the complainant in that suit and present plaintiff, to the defendants to perform such drama at their theatre. Such order recited substantially that the court was of opinion that complainant had no copyright or statutory right of exclusive dramatic representation thereof, because she derived her literary proprietorship thereof from a non-resident alien author. That the theatrical representation of such drama by the defendants, unauthorized by the complainant, was such an infraction of her rights as entitled her to relief independently of any statute, because snch drama had never been presented or published otherwise than by theatrical representation, and such defendants were not fairly enabled to represent it, by means of the complainant’s own representation of it. And such court being also of opinion that the proper pecuniary compensation to the complainant was the valué of a manuscript copy of such drama, and a license to the defendants to perform such drama without limitation at their theatre, directed a reference to a master to ascertain such value; such master subsequently reported the value of such copy and license to be a certain sum, five hundred dollars, upon which the final decree was made adjudging that the complainant recover the amount with her costs. It is not easy to discover by barely comparing the pleadings with the decision contained in the decretal order, to ascertain either what was passed upon thereby beyond the absence of any right of the complainant to a copyright or what adjudication was made therein. It would appear thereby that the court adopted the following resolutions, to wit: First, That the right of the complainant to the *346 exclusive representation of such drama was paramount to the right of the defendants-thereto. Secondly, That as matter of law any publication of such drama by the complainant, by its theatrical representation, could only authorize a representation of it by others when a knowledge of its contents necessary therefor was derived from such representation by the complainant ; and lastly, That as matter of fact, such a knowledge of its contents as enabled the defendants so to perform it was not derived from the complainant’s representation, but by means not sanctioned by the complainant. This is fully borne out by an examination of the able and elaborate opinion of the learned presiding judge, and what appears to be a summary of its conclusions preceding it as a head-note. Such conclusions were substantially as follows :
1. That the complainant became the ownek or literary proprietor of the original drama by purchase from the author (Taylor).
2. That it was performed at the complainant’s theatre as altered according to suggestions made by a performer at such theatre, while in her employment, to benefit such performance.
3. That the defendants became possessed of a copy of such drama through the medium of the residuary legatee of a performer at a theatre in London, whose manager had been temporarily proprietor of such original manuscript, but that, as matter of law, such possession did not entitle any one to perform the drama without the consent of the original author or his assigns; and there was no proof of such consent in the case.
4. That the changes made in the original by the complainant’s employee before mentioned became accessions to the original, and as such their proprietorship remained with the complainant.
5. That the communication of them by such performer to the defendants, without her authority, did not entitle them to perform the drama in question with such alterations.
6. That although the defendants and their principal actress in such drama had been present at its performance at the complainant’s theatre, they were not able to represent it from ■ their mere memory, or that of any of the audience, of its words.
1. That the mode of performing such drama at the theatre of the defendants established, by minute circumstances, that it *347 was a close imitation of the mode in which it was represented at the complainant’s.
8. That as matter of law the transfer from the original author of the use of the original manuscript for this country to the complainant, would enable her to maintain her action in a court of equity, and that she had the same remedy to prevent i the use by the defendants of knowledge obtained from one of her employees, if acquired by him while in a confidential position in her employment, and known to them to be so acquired as by such employee himself.
9. That the changes made in the original drama by the performer, employed by the complainant, were essential to its successful representation, and that the representation by the defendants of such drama incorporating such changes therein was a violation of the complainant’s rights.
10. That although the complainant published such drama by its public representation, yet the defendants were not enabled to perform it by knowledge derived from such publication.
It also appeared by such opinion that the court declined to pass on the question whether the defendants were guilty of fraud in performing from the copy of the drama obtained by Silsbee and transferred by his widow to them, upon the ground that there was no averment in the complaint of its being surreptitously or improperly obtained. 5To evidence seems to have been introduced or inquiry made as to the mode in which Silsbee acquired the copy of the original manuscript possessed by him, which afterward came into the possession of the defendants. The main issues made by the pleadings in this action are substantially:
1. Whether the plaintiff acquired the literary proprietorship of the original drama by purchase from the original author, and by the employees and agents caused many additions and alterations and verbal changes to be made in such manuscript, suggested by her skill and experience in such matters, enhancing its popularity.
2. Whether she kept or still keeps the manuscript of such drama unpublished or unprinted, not circulated or dedicated to the public otherwise than by her dramatic representation.
3. Whether the defendant, Clarke, has procured a copy of *348 such drama from a surreptitious source, and has given a representation, and intends to give others, of such drama in the city of New York, by means of such copy and of information given by actors at the plaintiff’s theatre, with knowledge of her rights.
4. Whether the drama so performed by him is identical with that which is the plaintiff’s property, introducing therein most of the additions, and verbal changes made by the plaintiff or her employees at her theatre.
Some of such issues were clearly adjudicated in favor of the plaintiff in the suit in the United States circuit court already mentioned, such as the acquisition of the literary proprietorship of the drama in question by the plaintiff, although others, such as the identity of the piece performed by the defendants in New York, with the manuscript original in the possession of the plaintiff, as modified by changes made by persons in her employ, with a view to a performance at her theatre, were not. I think, therefore, it was material evidence in the action, and should have been admitted.
For these reasons I think the judgment appealed from should be reversed and a new trial awarded, with costs.